**Micah D. Fargey** (OSB No. 096814)
micah@fargeylaw.com
FARGEY LAW PC
7455 SW Bridgeport Road, Suite 220
Portland, Oregon 97224
Telephone: (503) 946-9426
Facsimile: (503) 342-8332

Attorneys for Plaintiff
**Kevin Roberts**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **KEVIN ROBERTS**, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>**OREGON STATE UNIVERSITY**, a public university, **SCOTT BARNES**, in his individual and official capacity, **SUSAN CAPALBO**, in her individual and official capacity,<br><br>Defendants. | Case No. 6:17-cv-01652<br><br>COMPLAINT for<br><br>1. 42 U.S.C. § 1983 – Deprivation of Civil Rights<br>2. Breach of Contract<br>3. Breach of the Implied Covenant of Good Faith and Fair Dealing<br>4. Promissory Estoppel<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Kevin Roberts ("Plaintiff"), for his complaint against the defendants, alleges as follows:

## I.     JURISDICTION AND VENUE

1.     This court has jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. § 1331 (federal question) and supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

1 – COMPLAINT

2.  Venue is proper in Oregon's federal court in this division, pursuant to 28 U.S.C. § 1391 (b)(1) and (2), because the events giving rise to Plaintiff's claims arose within this district, and because the defendants reside in this district for purposes of venue and jurisdiction.

## II.  THE PARTIES

3.  Plaintiff is a citizen of the state of Oregon and resides in Linn County, Oregon. At all times material to this action, Plaintiff lived and worked in the state of Oregon.

4.  Defendant Oregon State University ("OSU") is a public university organized under the laws of the state of Oregon.

5.  Scott Barnes ("Barnes") was and is an individual residing, on information and belief, in Benton County, Oregon. At all material times, Barnes was an employee, agent, and officer of OSU, and is being sued in his individual and official capacities.

6.  Susan Capalbo ("Capalbo") was and is an individual residing, on information and belief, in Benton County, Oregon. At all material times, Capalbo was an employee, agent, and officer OSU, and is being sued in her individual and official capacities.

7.  OSU, Barnes, and Capalbo are referenced collectively in this complaint as "Defendants" or "the defendants."

## III.  FACTUAL ALLEGATIONS

### A.  Plaintiff's Employment Background with OSU

8.  Plaintiff began working for OSU as an assistant wrestling coach for OSU's men's wrestling team in the fall of 2006. By all accounts, Plaintiff excelled in his role in all respects.

9. For the entirety of his employment, Plaintiff had an employment contract or contracts with OSU providing an annual salary, certain benefits, and specific circumstances under which the contract could be terminated. The term of each contract was set to begin on July 1 and end June 30 the following year.

10. The timing of this contract term was critical, as it followed students' academic calendar year and the timing necessary to coach a team for the entire school year.

11. Certain terms were contained in each contract. Each included a "for cause" termination provision allowing termination of the agreement under certain circumstances. For example, OSU could terminate an employee for cause for the "failure to perform the responsibilities of an academic staff member," including the failure to comply with the "Code of Ethics of University" or the "failure to carry out faithfully and diligently all duties and responsibilities . . . ."

12. The contracts also contained provisions to terminate the agreement without cause. OSU had the right to terminate an employee without cause on 15 days written notice, but it would remain obligated to provide certain benefits and pay the terminated employee the remaining compensation due under the term of the agreement over time – in other words, fulfilling its financial obligations under the agreement for the rest of the school year.

13. Each year, OSU presented a proposed contract to Plaintiff in June or July that contained these terms, and each time it was promptly signed by Plaintiff and at least one representative of OSU.

### B. Plaintiff Falsely Accused of Improper Conduct

14. In the spring of 2017, one of the students on OSU's wrestling team was allegedly offended by certain statements and questions by his teammates, which he interpreted to be derogatory towards his race and/or religion.

15. The student complained to OSU's administration. The administration conducted a cursory and inadequate investigation.

16. Defendants apparently concluded that Plaintiff had either participated in the offensive banter among the students or neglected his supervisory role over the students.

17. On information and belief, Defendants blamed Plaintiff, accused him of wrongdoing, and intended thereafter to terminate his employment for cause.

### C. Plaintiff's Employment Agreement Renewed for the 2017-2018 Academic Year

18. Plaintiff diligently and successfully worked on behalf of OSU coaching the wrestling team during the 2016-2017 calendar year, much as he had many years before. Like years past, OSU presented the 2017-2018 agreement to Plaintiff, which was set to run from July 1, 2017 through June 30, 2018, and which provided an annual salary of $108,000.

19. Plaintiff signed the agreement around July 13, 2017; Barnes signed the agreement on July 7, 2017. On information and belief, Barnes signed the agreement as the university's designee, or at the direction and appointment of OSU's president. On information and belief, either the president or the president's designee also signed the agreement.

20. Plaintiff fully performed under the terms of the 2017-2018 agreement and began fulfilling his duties to OSU throughout July 2017. He traveled across the country in

July and August 2017, recruiting students for OSU's wrestling team, spending time away from his family, and served on OSU's hiring committee.

21. Not only did he continue to work under the undisputed terms of the agreement, he had foregone and chose to forego other employment opportunities – he reasonably believed Defendants had promised him gainful employment through June 30, 2018.

22. Plaintiff had no reason to doubt OSU's promises, in no small part because every prior agreement had been presented to Plaintiff in the same manner and because he and OSU both began performing under the terms of the agreement.

23. Even OSU acknowledged Plaintiff had an agreement, listing Plaintiff as one of its employees on its website with a contract effective July 13, 2017 through June 30, 2018, and paying Plaintiff up to the date of his termination.

### D. Defendants Terminate Plaintiff's Employment Agreement and Violate His Due Process Rights

24. On or around August 8, 2017, Defendants notified Plaintiff that it was terminating Plaintiff's employment under the terms of the agreement. The termination was described as "without cause" and provided Plaintiff with 15 days' notice – as required by the agreement – his termination was effective August 23, 2017.

25. Understandably, Defendants fully believed and understood that Plaintiff and OSU had a valid, enforceable agreement at the time it terminated his employment.

26. However, after his termination, and once Plaintiff asserted his rights to continued compensation pursuant to and promised by the terms of the agreement, Defendants changed their position on the enforceability of the agreement.

27.     Defendants have since denied that Plaintiff had an enforceable agreement for employment for the 2017-2018 school year because the president or the president's designee had not signed the agreement, even though Barnes and Plaintiff both executed the agreement.

28.     On information and belief, Defendants characterized Plaintiff's employment as "without cause" as a ruse to avoid providing Plaintiff with his due process rights to contest the allegations of wrongdoing described above – proper notice and an opportunity to respond to any false allegations – and knowing that it would not be able to meet the standards under the agreement to terminate Plaintiff for cause.

## IV.     DAMAGES

29.     Because of OSU's actions, Plaintiff has suffered irreparable harm, including economic damages from lost wages (past and future), and lost earning capacity, as well as noneconomic damages arising from emotional distress, loss of enjoyment of life, and damage to his personal and professional reputation in an amount to be proved at trial.

30.     As a direct and proximate cause of OSU's actions, Plaintiff has suffered economic damages totaling approximately $18,000 in lost wages pursuant to the breached employment agreement, an amount that continues to accrue at a rate of $9,000 per month.

31.     Barnes' and Capalbo's acts described herein were an intentional disregard of the rights of Plaintiff, in reckless disregard of their societal obligations, and committed with conscious indifference to the health, safety, and welfare of Plaintiff.  Barnes and Capalbo should be assessed punitive damages in such amount as may be found appropriate by a jury based on evidence presented at trial to punish them and to deter them and others from similar conduct in the future.

32. As a result of the defendants' actions, Plaintiff has been forced to incur attorney fees and costs for which he is entitled reimbursement pursuant to 42 U.S.C. § 1988.

## V.  CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

### (42 U.S.C. § 1983)

### (Against All Defendants)

33. Plaintiff incorporates paragraphs 1 through 32 by reference as though fully set forth herein.

34. The Due Process Clause of the Fourteenth Amendment to the United States Constitution prohibits OSU from depriving any person of life, liberty, or property without due process of law.

35. Plaintiff had a liberty and/or property interest in his continued employment at OSU, his employment agreement, and his long-standing employment relationship with OSU.

36. The actions of the defendants failed to provide Plaintiff with adequate notice and the chance to be heard to protect his property interest in continued employment.  Instead, Defendants avoided providing him with any due process by characterizing his potential "for cause" termination as a termination "without cause."  This violated his rights to due process, as protected by the Fifth and Fourteenth Amendments to the U.S. Constitution.

37. As a direct and proximate cause, Plaintiff was deprived of his position as an OSU employee and rights under the agreement.

38. Plaintiff is entitled to recover reasonable and necessary attorney fees and costs incurred in the prosecution of this action pursuant to 42 U.S.C. § 1988.

## SECOND CLAIM FOR RELIEF

### (Breach of Contract)

### (Against OSU)

39. Plaintiff incorporates paragraphs 1 through 38 by reference as though fully set forth herein.

40. Plaintiff and OSU had a valid, enforceable agreement providing for continued employment, so long as Plaintiff performed his obligations, through June 30, 2018.

41. In exchange for this promise, Plaintiff did not pursue other employment opportunities, and decided to remain employed by OSU and rely on its representations.

42. OSU breached this agreement by terminating his employment and refusing to provide the compensation and benefits promised under the agreement.

43. These actions caused Plaintiff to suffer significant economic damages as described above.

## THIRD CLAIM FOR RELIEF

### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

### (Against OSU)

44. Plaintiff incorporates paragraphs 1 through 43 by reference as though fully set forth herein.

45. Every contract contains an implied covenant of good faith and fair dealing.

46. OSU engaged in conduct that violates the expectation of Plaintiff when it terminated his employment and expectation of continued benefits and compensation.

47. These actions caused Plaintiff to suffer significant economic damages as described above.

8 – COMPLAINT

## FOURTH CLAIM FOR RELIEF

### (Promissory Estoppel)

### (Against OSU)

48. Plaintiff incorporates paragraphs 1 through 38 by reference.

49. OSU promised Plaintiff continued employment through its words and actions, and OSU breached that promise.

50. Plaintiff fully relied on OSU's promises, to his detriment, and that reliance was reasonable and foreseeable. OSU intended to induce Plaintiff's reliance on its promises.

51. Enforcing the agreement is the only way to avoid a gross injustice.

52. These actions caused Plaintiff to suffer significant economic damages as described above.

## V.  DEMAND FOR JURY TRIAL

53. Plaintiff respectfully demands a trial by jury.

## VI.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

1. Awarding Plaintiff economic and noneconomic damages as described in paragraph 29 above for his first claim for relief;

2. Awarding Plaintiff $108,000 for his second, third, and fourth claims for relief;

3. Awarding Plaintiff his costs and disbursements, including reasonable attorney fees, costs, and expert witness fees pursuant to 42 U.S.C. § 1988 on Plaintiff's first claim for relief;

4. Pre- and post-judgment interest on all amounts due to Plaintiff; and

5. Any other relief the Court deems just and equitable.

Respectfully submitted this 18th day of October, 2017.

                                                */s/ Micah D. Fargey*

**Micah D. Fargey** (OSB No. 096814)
micah@fargeylaw.com
FARGEY LAW PC
7455 SW Bridgeport Road, Suite 220
Portland, Oregon 97224
Telephone: (503) 946-9426
Facsimile: (503) 342-8332

Attorneys for Plaintiff
**Kevin Roberts**